**PEERLESS WEIGHING AND VENDING MACHINE CORPORATION, a corporation, Plaintiff,**

v.

**PUBLIC BUILDING COMMISSION OF CHICAGO, a Municipal corporation, Defendant.**

**No. 62 C 144.**

United States District Court
N. D. Illinois, E. D.
Feb. 14, 1962.

Edward Hladis and Arvey, Hodes & Mantynband, Chicago, Ill., for plaintiff.

John C. Melaniphy and Concannon, Dillon, Snook & Morton, Chicago, Ill., for defendant.

Before HASTINGS, Chief Circuit Judge, CAMPBELL, Chief Judge, and LaBUY, District Judge.

CAMPBELL, Chief Judge.

This is an action heard before the above three-judge court convened pursuant to Title 28 U.S.C. §§ 2281 and 2284. Plaintiff's complaint requests a temporary restraining order and a permanent injunction enjoining the enforcement of Section 14.1 of the Illinois Public Building Commission Act (Laws of Illinois, 1961, page 2770, Chapter 34, Section 3314.1, Illinois Revised Statutes, 1961), and an order enjoining the Public Building Commission of Chicago and its agents, employees and representatives from proceeding with an eminent domain action now pending in the Circuit Court of Cook County, Illinois. In general plaintiff's complaint alleges Section 14.1 is unconstitutional in that it denies the plaintiff equal protection of the laws and due process of law in contravention of the 14th Amendment to the Constitution of the United States. Defendant has filed a special appearance moving the complaint be stricken and the action dismissed and that the temporary restraining order be denied.

A brief history of the facts shows that on September 12, 1961, the defendant, the Public Building Commission of Chicago (hereinafter referred to as "Commission"), a municipal corporation created by the City of Chicago in accordance with the aforesaid Public Building Commission Act of the State of Illinois, filed a petition in the Circuit Court of Cook County to condemn a certain parcel of real estate owned by Peerless Weighing & Vending Machine Corporation, (hereinafter referred to as "Peerless"). The property is located in the central business district of the City of Chicago commonly known as the "Loop Area". This real estate consists of an area approximately 54,560 square feet constituting a city block bounded by Court Place on the north, Dearborn Street on the east, Washington Street on the south and Clark Street on the west, with the exception of an area of approximately 4,000 square feet at the northwest corner of Dearborn and Washington Streets. This property is improved with a commercial parking lot and other buildings which are leased to various business enterprises.

Subsequent to the filing of the eminent domain petition in the Circuit Court of Cook County, Peerless, the plaintiff herein, had the cause removed to this court where it was docketed as Civil Case No. 61 C 1681, and referred to Judge Julius J. Hoffman. After hearing, and by order entered November 17, 1961, Judge Hoffman granted the Commission's motion and remanded said eminent domain proceeding to the Circuit Court of Cook County.

Peerless then appeared in the State Court action and filed a jury demand, a traverse and a motion to dismiss. It is noted that said traverse alleges substantially the same constitutional defects set forth in the complaint before us. Subsequently, on January 11, 1962, Peerless filed in this Court the complaint now under consideration.

The applicable statutes so far as herein material provide as follows:

Title 28 § 1447(d), U.S.C.

"An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise." As amended May 24, 1949, c. 139, § 84, 63 Stat. 102.

Title 28 § 2283

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of

its jurisdiction, or to protect or effectuate its judgments."

Eminent Domain Act; Illinois Revised Statutes (1961) Chapter 47 Sections 2.8, 2.9 and 10(a)

"§ 2.8 After the petitioner has taken possession of the property pursuant to the order of taking, the petitioner shall have. no right to dismiss the petition, or to abandon the proceeding, as to all or any part of the property so taken, except upon the consent of all parties to the proceeding whose interests would be affected by such dismissal or abandonment. Added by act approved July 11, 1957. L.1957, p. 2603."

"§ 2.9 If, on an appeal taken under the provisions of Section 2.2. of this Act, the petitioner shall be determined not to have the authority to maintain the proceeding as to any property, which is the subject thereof, or if, with the consent of all parties to the proceeding whose interests shall be affected, the petitioner dismisses the petition or abandons the proceedings as to any such property, the trial court then shall enter an order revesting the title to such property in the parties entitled thereto, if the order of taking vested title in the petitioner; requiring the petitioner to deliver possession of such property to the parties entitled to the possession thereof; and making such provision as shall be just, for the payment of damages arising out of the petitioner's taking and use of such property, and also for costs, expenses, and attorney fees as provided in Section 10 of this Act; and the court may order the clerk of the court to pay such sums to the parties entitled thereto, out of the money deposited by the petitioner in accordance with the provisions of Section 2.3(a) of this Act. Added by act approved July 11, 1957. L.1957, p. 2603. * * *

"§ 10.(a) If the petitioner is not in possession pursuant to an or-

der entered under the provisions of Section 2.3 of this Act the judge or court, upon such report, or upon the court's ascertainment and finding of the just compensation where there was no jury, shall proceed to adjudge and make such order as to right and justice shall pertain, ordering that petitioner enter upon such property and the use of the same upon payment of full compensation as ascertained as aforesaid, within a reasonable time to be fixed by the court, and such order, with evidence of such payment, shall constitute complete justification of the taking of such property. Provided, that if in such case the petitioner shall dismiss said petition before the entry of such order or shall fail to make payment of full compensation within the time named in such order, that then such court or judge shall, upon application of the defendants to said petition or either of them, make such order in such cause for the payment by the petitioner of all costs, expenses and reasonable attorney fees of such defendant or defendants paid or incurred by such defendant or defendants in defense of said petition, as upon the hearing of such application shall be right and just, and also for the payment of the taxable costs."

Public Building Commission Act: Illinois Revised Statutes (1961) Chapter 34 Section 3314.1

"*Be it enacted by the People of the State of Illinois, represented in the General Assembly:*

"Section 1. Section 14.1 is added to 'An Act to authorize the creation of Public Building Commissions and to define their rights, powers and duties', approved July 5, 1955, as amended, the added Section to read as follows:

"§ 14.1. In addition to the permanent financing authorized by Sections 14 and 15 of this Act, the Board of Commissioners of any public building commission may borrow

money and issue interim notes in evidence thereof, in the manner following:

"(a) Whenever any area or site has been selected, located, designated and approved, as provided by Section 14 of this Act, and it is deemed advisable and in the interests of the Commission to borrow funds temporarily for the acquisition of the area or site in advance of permanent financing, the Board of Commissioners may from time to time and pursuant to appropriate resolution, issue interim notes to evidence borrowings for the purpose of obtaining funds with which to acquire the area or site selected and approved for the erection, alteration or improvement of a building or buildings to be located thereon for the purposes provided for by this Act, including funds for payment of interest on such borrowings and funds for all necessary and incidental expenses in connection with said area or site until the date of the permanent financing. Any resolution authorizing the issuance of said notes shall describe the area or site to be acquired and shall specify the principal amount, rate of interest (not exceeding six per cent per annum) and maturity date which shall be the same for all interim notes but not to exceed five years from date of issue of the first of said notes so issued, and such other terms as may be specified in said resolution; provided, however, that time of payment of any such notes may be extended for a period of not exceeding two years from the maturity date thereof.

"The Board of Commissioners may provide for the registration of the notes in the name of the owner either as to principal alone, or as to both principal and interest, on such terms and conditions as the Board may determine by the resolution authorizing their issue. The notes shall be issued from time to time by the Board of Commissioners as funds are borrowed, in the manner the Board of Commissioners may determine. Interest on the notes may be made payable semiannually, annually or at maturity. The notes may be made redeemable, prior to maturity, at the option of the Commission, in the manner and upon the terms fixed by the resolution authorizing their issuance. The notes may be executed in the name of the Commission by the Chairman of the Board of Commissioners or by any other officer or officers of the Commission as the Board by resolution may direct, shall be attested by the Secretary or such other officer or officers of the Commission as the Board may by resolution direct, and be sealed with the Commission's corporate seal. All said notes and the interest thereon may be secured by a pledge of any income and revenue derived by the Commission from the property to be acquired with the proceeds of the notes, after deducting from such income and revenue any reasonable and necessary maintenance and operation expenses, and shall be payable solely from said income and revenue and from the proceeds to be derived from the sale of any revenue bonds for permanent financing authorized to be issued under Sections 14 and 15 of this Act, and from the property acquired with the proceeds of the notes.

"Contemporaneously with the issue, as provided by this Act, of revenue bonds all interim notes, even though they may not then have matured, shall be paid, both principal and interest to date of payment, from the funds derived from the sale of revenue bonds for the permanent financing and such interim notes shall be surrendered and canceled.

"(b) The Commission, in order further to secure the payment of the interim notes, is, in addition to the

foregoing, authorized and empowered to do the following:

"1. Pledge or mortgage all or any part of the property to be acquired with the proceeds of the interim notes, or provide otherwise for the sale, public or private and with or without notice, of all or any part of the property, in the event of default in payment of principal of or interest on the interim notes or on any covenant or agreement of the Commission in connection with the interim notes, and in the event of any such default to permit the acceleration of the maturity of the interim notes. Except with respect to the funds derived from revenue bonds, as hereinabove provided, no pledge, mortgage or provision for the sale of any property shall relate to any property, other than the property to be acquired with the proceeds of any and all said interim notes, and any net income and revenue derived from the property.

"2. Covenant against pledging or mortgaging or otherwise disposing of all or any part of or interest in the property to be acquired with proceeds of the interim notes, or any net income derived from the property; and against permitting or suffering any lien on the property or said net income; and against any borrowings or incurring liabilities in addition to the borrowings and liabilities, evidenced by the interim notes, prior to the issuance of revenue bonds; and against the issue of interim notes in excess of a specified principal amount; and against preference of any interim note over any other interim note as to payment of interest or principal; and against making any substitutions for or additions or improvements to said property except with the proceeds derived from borrowings evidenced by any and all said interim notes, or with the net income derived from said property.

"3. Make any other or additional covenants, terms and conditions not inconsistent with the provisions of subparagraph (a) of this Section, and do any and all acts and things as may be necessary or convenient or desirable in order to secure payment of its interim notes, or, in the discretion of the Commission, as will tend to make the interim notes more acceptable to lenders, notwithstanding that the covenants, acts or things may not be enumerated herein; provided, however, that nothing contained in this subparagraph shall authorize the Commission to secure the payment of the interim notes out of property, other than the property acquired with the proceeds of the interim notes, and any net income and revenue derived from the property and the proceeds of revenue bonds as hereinabove provided.

"(c) The interim notes shall not constitute an indebtedness within the meaning of any constitutional or statutory debt limitation or restriction.

"(d) No member, officer, agent or employee of the Commission nor any other person who executes interim notes, shall be liable personally thereon by reason of the issuance thereof."

 The pleadings clearly show that all of the issues presently before us are now pending before the Circuit Court of Cook County, the plaintiff herein having properly placed them in issue by way of his traverse. The State Court has taken general plenary jurisdiction of this matter and all of the issues relating thereto. There is nothing to indicate that all of the issues, including those of a constitutional nature, cannot be properly and adequately determined in the State Court. Moreover, plaintiff's claim is based wholly upon rights asserted under the Eminent Domain Statute of Illinois and involves no rights arising under the Constitution or laws of the United States. Thus, even without re-

sort to the principles of comity we lack jurisdiction. In addition, the Illinois State Courts afford a plain, speedy and efficient procedure by which Peerless might have an expeditious hearing on all questions herein asserted. The Act complained of having authorized a bond issue, Peerless can immediately petition for leave to file a taxpayer's suit. If this petition is granted the petition will go directly and expeditiously to the Illinois Supreme Court, and from there possibly to the United States Supreme Court by way of Certiorari.

■ Further, Section 1447(d) of the Judicial Code (Title 28 U.S.C.) is unequivocal in stating that once a case is removed and subsequent thereto is remanded, the order remanding is not reviewable. The acknowledged legislative intent in passing this statute was to avoid the delay of a case by the repeated and prolonged federal litigation of jurisdictional questions. See U. S. v. Rice, 327 U.S. 742, 66 S.Ct. 835, 90 L.Ed. 982. The facts before us indicate the plaintiff previously once removed this case from the State Court. Pursuant to said removal Judge Hoffman held a hearing to determine plaintiff's alleged claim of federal jurisdiction. Judge Hoffman made a finding that plaintiff's pleadings failed to sustain federal jurisdiction. In keeping with the intent of Section 1447(d), we cannot now reconsider the issue of jurisdiction, plaintiff having once been accorded the right to allege said jurisdiction. Accordingly, and completely dispositive of this case, the motion of defendant for judgment of dismissal as to the complaint is granted, and the same hereby is dismissed for lack of jurisdiction.

Requisite to making the above finding of lack of jurisdiction it was necessary to exhaustively review the pleadings and to give thorough consideration to the noteworthy oral presentations tendered by respective counsel. In consequence of our research we here comment briefly on the merits of the case.

■ The only point seriously urged by plaintiff in its argument and complaint is that Sections 14 and 15 of the Public Building Commission Act of the State of Illinois are unconstitutional. In support of this allegation he asserts; that there is a possibility the property acquired by the Commission may never be utilized for a "public purpose", and, that the Act fails to provide for a fund out of which the Commission could pay for a condemnation judgment in its favor or, proper costs and attorney fees should the Commission subsequently elect to dismiss its petition.

We have noted that the Illinois Supreme Court considered and declared constitutional the Public Building Commission Act in People ex rel. Adamowski v. Public Building Commission, 11 Ill.2d 125, 142 N.E.2d 67 (1957).

The first of the fiscal provisions of the Act provides for the issuance of interim promissory notes to private investors. This loan agreement has in fact been entered into with six Chicago banks calling for the banks to loan to the Commission funds to be used solely for interest payments and the acquisition of the Civic Center Site, and all necessary and incidental expenses relating thereto. The interim notes are payable from income and revenue derived by the Commission from property to be acquired with the proceeds of the notes. To secure payment of the notes the Commission pledges to the banks said income and revenue derived from such property. Upon the request of the holders of at least 66⅔% of the principal amount of outstanding notes, the Commission has agreed to pledge or mortgage to the banks all or any part of the property. It is plaintiff's contention that the possibility of a mortgage existing in the hands of private parties creates the further possibility that the property may not be used for a "public purpose". In asserting this contention plaintiff fails to place such reliance on the second of the fiscal provisions. That provision provides for the Commission to sell revenue bonds to pay-off the interim notes. Peerless would have us assume that these bonds cannot, or will not be sold. A State by the grant

of such a power as we have here impliedly consents to regulate and supervise the exercise of such a power. As to the choice of means selected to finance eminent domain legislation, this decision is within the sole discretion of the State. Were we to substitute our judgment for that of the State Legislature we would be conducting an unwarranted incursion into the administrative and legislative domains. There being no denial of Constitutional rights in the financing provisions of the Act, we must refrain from acting thereon.

Nor can we share plaintiff's great worry that the Commission is not and will not be financially able to pay the condemnation judgment, or costs and attorney fees should the petition in the State Court be dismissed. As to the payment of the condemnation judgment, the law of eminent domain is clear in holding that title to property cannot be taken in condemnation proceedings until compensation is paid. Should the title have passed and the required judgment payment not be made, then the landowner has the right to have both the title revested and damages awarded for the trespassory taking. Thus, this contention is on its face without merit.

Relating to the possible dismissal by the Commission of its petition in the State Court, it is true that Section 10 of the Illinois Eminent Domain Act does provide in such event for the payment of costs and attorney fees to the landowner. But, this protection is merely a matter afforded by some states, such as Illinois. This right is not guaranteed by the United States Constitution. Moreover, we cannot help but believe that if those unusual circumstances should occur whereby the Commission did in fact dismiss its petition, and at the same time was without funds, the plaintiff would then be the possessor of a worthless judgment. For, if the Circuit Court of Cook County were to award plaintiff a valid judgment for costs and attorney fees we cannot believe that the legislatures of the State of Illinois, or the County of Cook, or the City of Chicago would fail the following year to appropriate for such a judgment. It is noted that none of the above have failed to appropriate for the payment of all judgments in the past.

Therefore, even if jurisdiction were found we would be required to dismiss the complaint for failure to state a cause of action upon which relief could be granted.

Cause dismissed at plaintiff's costs.