MOLLIE H. BROMFIELD & another, executors, & others[1]
*vs.* TREASURER AND RECEIVER GENERAL & another.[2]

Suffolk. September 13, 1983. — December 29, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Eminent Domain,* Payment of award. *Constitutional Law,* Appropriation of money, Expenditure of money. *Mandamus. Treasurer and Receiver General.*

In an action pursuant to G. L. c. 79, § 10A, seeking to compel payment by the State Treasurer of a judgment in an eminent domain proceeding where the original appropriation for the taking had been exhausted and where the Legislature had made no new appropriation, this court concluded that the Commonwealth's delay of six months between the issuance of the certificate of judgment in the eminent domain proceeding and the plaintiffs' commencement of the present action did not, in the circumstances, constitute unreasonable delay amounting to an impairment of the plaintiffs' right to reasonable compensation and that the case did not warrant extraordinary judicial intervention, unless the Legislature should fail to make the required appropriation during the next legislative session. [668-670]

Relief in the nature of mandamus pursuant to G. L. c. 79, § 10A, is not available to compel the State Treasurer to pay a judgment in an eminent domain proceeding if the Legislature has not appropriated funds for the purpose. [670-673]

[1] The plaintiffs Mollie H. Bromfield and The First National Bank of Boston are coexecutors of the estate of Isadore Bromfield. The other plaintiffs are Harry J. Reicher, Richard S. Robie, Jr., and Donald S. Robie, trustees of the Richard S. Robie Trust. The plaintiffs were substituted for East Coast Realty Corporation by the allowance of a motion on June 9, 1982. The plaintiffs became owners of the claim following the dissolution of the corporate plaintiff.

[2] The Commonwealth was joined as a party defendant in accordance with G. L. c. 79, § 10A, which provides that in actions to compel compliance with eminent domain awards, the body politic or corporate on whose behalf the taking was made shall be joined. The plaintiffs designated the defendant Treasurer and Receiver General as the "person having a duty of compliance" with the thirty-day payment provision contained in G. L. c. 79, § 36A.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on February 11, 1983.

The case was reported by *O'Connor, J.*

*J. Owen Todd* for the plaintiffs.

*Elizabeth Bowen Donovan,* Assistant Attorney General, for the defendants.

NOLAN, J. This is an action in the nature of mandamus pursuant to G. L. c. 79, § 10A. The case is before us following a reservation and report by a single justice of this court on March 2, 1983. Mass. R. Civ. P. 64, 365 Mass. 831 (1974). The principal issue for our determination is whether an order directed to the Treasurer and Receiver General of the Commonwealth (Treasurer) should issue to compel payment of a judgment and execution rendered in an eminent domain action, where the initial appropriation authorizing the taking has been exhausted, and where the Legislature has made no new appropriation sufficient to satisfy the judgment. For the reasons stated below, we conclude that mandamus is an inappropriate remedy.

The parties have agreed to the following facts. On June 26, 1970, the Commonwealth, acting through the Metropolitan District Commission (MDC), seized the plaintiffs' land, known as Peddocks Island, for conservation and recreation purposes.[3] The record owner of Peddocks Island at that time, East Coast Realty Corporation, petitioned for an assessment of damages in the Superior Court in Plymouth County on March 1, 1971. Trial of that action commenced June 14, 1982; on June 23, 1982, following the jury's verdict, judgment was entered against the Commonwealth in the amount of $2,080,000, plus interest and costs. No appeal was taken.

The court then issued a certificate of judgment in the amount of $3,262,980.33, representing the judgment, plus

---

[3] Peddocks Island, situated in Boston Harbor in the town of Hull, Plymouth County, encompasses approximately 212 acres of land.

interest and costs accrued until the date of its issuance,[4] August 17, 1982. On the same day, the certificate was sent to the Comptroller of the Commonwealth.

By letter dated September 16, 1982, counsel for the plaintiffs made demand upon the MDC for payment of the judgment, with interest, pursuant to G. L. c. 79, § 37. On September 29, 1982, the MDC responded by stating that the executive assistant to the Commissioner of the MDC had requested funds to satisfy the judgment, that no appropriation had been received, and that the MDC would proceed "as expeditiously as possible" in pursuance of that request.

Having received no monies from the Commonwealth, the plaintiffs filed the instant action on February 11, 1983. The Commonwealth concedes both the $3,262,980.33 debt owed to the plaintiffs and its liability for ten per cent annual interest from the date of the certificate of judgment until the end of the month preceding payment.[5] The parties stipulate that the original appropriation for the acquisition of Peddocks Island has been exhausted, and that the Legislature has made no further appropriation from which to satisfy the judgment.

The plaintiffs contend that the Commonwealth's failure to satisfy the judgment is unreasonable and deprives them of property without just compensation, in violation of art. 10 of the Massachusetts Declaration of Rights and the Fifth Amendment to the United States Constitution. Further, the plaintiffs assert that the Treasurer and the Common-

---

[4] As to the right of an owner whose property has been taken to receive interest on the judgment from the Commonwealth, see *Griefen* v. *Treasurer & Receiver Gen., post* 674 (1983).

[5] Judgment interest accrues at the rate of ten per cent a year from the date judgment enters until the end of the month preceding payment. Demand and failure to pay are prerequisites to the Commonwealth's interest obligation. G. L. c. 79, § 37 (as amended through St. 1981, c. 800, § 3, raising the interest rate from six to ten per cent).

The Commonwealth may avoid interest obligations by making payment within thirty days of entry of judgment. G. L. c. 79, § 37. It is estimated that interest on this judgment is running approximately $900-$1,000 *a day*.

wealth were bound by G. L. c. 79, § 36A, to pay the August 17, 1982, judgment within thirty days of its entry, and that mandamus should issue under G. L. c. 79, § 10A, to compel that payment.

While admitting the indebtedness of the Commonwealth, the defendants state that the Treasurer can make no payment in the absence of an appropriation, and that the plaintiffs have suffered no deprivation, inasmuch as their judgment, when paid, will include interest compensating them for delay.

1. *The obligation of the Commonwealth.*  The duty of the Commonwealth to provide compensation for land seized through its powers of eminent domain is constitutionally compelled by art. 10 of the Declaration of Rights.[6]  Because the Commonwealth's Constitution affords protection parallel to that of the United States, we will deal with the plaintiffs' arguments as a matter of State law.  See *Sweet* v. *Rechel,* 159 U.S. 380, 400 (1895) (Massachusetts' provision for reasonable compensation and Federal mandate of just compensation are substantially similar).  Whenever the Commonwealth chooses to exercise its powers of eminent domain, it incurs a corollary and inseparable obligation to make payment for the land seized.  The fundamental principle is stated as follows: "The duty of paying an adequate compensation, for private property taken, is inseparable from the exercise of the right of eminent domain.  The act granting the power must provide for compensation, and a ready means of ascertaining the amount.  Payment need not precede the seizure; but the means for securing indemnity must be such that the owner will be put to no risk or unreasonable delay." *Haverhill Bridge Proprietors* v. *County Comm'rs of Essex,* 103 Mass. 120, 124-125 (1869).  Here, where the Commonwealth has

---

[6] Article 10 of the Declaration of Rights provides: "[W]henever the public exigencies require, that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor."

acknowledged its debt, the plaintiffs cannot be said to be at "risk" at this time. The issue, then, is whether there has been "unreasonable delay."

Delay is vexatious to the plaintiffs and likely to be costly to the Commonwealth, owing to sizable accumulations of interest. However, we do not perceive the delay of approximately six months between issuance of the certificate of judgment and the initiation of this litigation to be "unreasonable delay." The record before us indicates no wilfulness or bad faith on the Commonwealth's part in failing to make a sufficient appropriation to satisfy its debt.[7] At this juncture, in the absence of some reason other than the ordinary delays inherent in the legislative process, there is no basis for finding that the time elapsed between issuance of the execution and commencement of this litigation amounts to an impairment of the plaintiffs' constitutional right to reasonable compensation.

The presumption exists that the Commonwealth will honor its obligations. *Talbot* v. *Hudson*, 16 Gray 417, 431-432 (1860). This is not to say, however, that the plaintiffs are relegated to standing idly by, left only to consider, as reasonable compensation, the vague hope that on some unascertainable future date their judgment will be satisfied.[8] It has long been established that no citizen ought be compelled "to trust to the future justice of the Legislature" to provide the compensation owing him. *Connecticut River R.R.* v. *County Comm'rs of Franklin*, 127 Mass. 50, 53

---

[7] In its memorandum in opposition to the plaintiffs' request to reserve and report, the Commonwealth states that the MDC requested the Executive Office for Administration and Finance to petition the Legislature for funds. That request became an item in a deficiency budget which died in committee. The Commonwealth suggests that the deficiency budget procedure will need to be repeated unless an appropriation for Peddocks Island is included in a capital outlay budget.

[8] Any intimation that the accumulation of judgment interest alone might satisfy the plaintiffs' entitlement to reasonable compensation lacks logic. Past a certain point it is unavailing to consider such accumulations where, due to an unreasonable lapse of time, the prospect for compensation has degenerated from "when" to "if".

(1879), quoting from *Bloodgood* v. *Mohawk & Hudson R.R.*, 18 Wend. 9, 17 (N.Y. 1837). If the Legislature should fail to make an appropriation sufficient to meet the Commonwealth's obligation to pay this judgment with accrued interest by the end of the 1984 legislative session, consideration will be given to ordering a reconveyance of the property to the plaintiffs by imposing a constructive trust upon the property in the hands of the MDC by reason of the taking.[9] Cf. *Peerless Weighing & Vending Mach. Corp.* v. *Public Bldg. Comm'n of Chicago*, 209 F. Supp. 877, 883 (N.D. Ill.), appeal dismissed, 371 U.S. 801 (1962). But see *Reynolds* v. *State Bd. of Pub. Roads*, 59 R.I. 120, 123-124 (1937). Alternatively, this court may consider enjoining the MDC (assuming it were added as a party defendant) from taking any other lands until this judgment is satisfied. See *Perez* v. *Boston Hous. Auth.*, 379 Mass. 703, 729 (1980). Further, we may contemplate a departure from tradition by permitting levy of execution upon the Commonwealth's property. In the interim, however, the Legislature must be afforded an opportunity to meet its acknowledged, and ever-increasing, debt. The severity of the remedial devices which may be considered in the future demands caution, but we shall not shrink from the task of doing justice. The instant case calls for prompt legislative action, not a resort to extraordinary judicial intervention. Given adequate time for action, we are confident, the Legislature will respond to its obligation.

2. *The propriety of mandamus against the Treasurer.* The plaintiffs argue that the Massachusetts Constitution and the General Laws impose upon the Treasurer an obligation to pay this judgment, and that this court has the power to compel him to do so. The thrust of the plaintiffs' argument is that under art. 10 of the Declaration of Rights

---

[9] Obviously, this court cannot compel such an appropriation without violating art. 30 of the Declaration of Rights. "The power to appropriate money of the Commonwealth is a legislative power. Under the Constitution, it can be exercised only by the General Court and in the particular manner prescribed." *Opinion of the Justices*, 302 Mass. 605, 612 (1939).

they are entitled to reasonable compensation for the seized lands; that pursuant to G. L. c. 79, §§ 36A and 10A, payment of any judgment in an eminent domain proceeding must be made within thirty days thereof; that noncompliance may be enforced by writ of mandamus;[10] and that the provisions of Part II, c. 2, § 1, art. 11, of the Massachusetts Constitution present no obstacle to issuance of that writ.[11]

The plaintiffs' argument fails to recognize that, in the ordinary case, the Treasurer has no power to disburse any monies on behalf of the Commonwealth in the absence of an appropriation therefor, and then only where there exists a warrant executed by the Governor. Part II, c. 2, § 1, art. 11, of the Massachusetts Constitution.[12] Under G. L. c. 79,

---

[10] General Laws c. 79, §§ 36A and 10A, describe the procedure for enforcing eminent domain judgments. Under § 36A, payment must be made within thirty days of exhaustion or waiver of appellate rights; § 10A authorizes the instant petition for mandamus. While we agree with the plaintiffs that these sections are the statutory implementation of their constitutional rights, that contention does not mean that the appropriations procedure, which is similarly constitutionally compelled, can be ignored. Were that the case, one segment of the Constitution would achieve an unwarranted dominance over another.

[11] Part II, c. 2, § 1, art. 11, of the Massachusetts Constitution provides: "No monies shall be issued out of the treasury of this Commonwealth . . . but by warrant under the hand of the Governor . . . [and] agreeably to the acts & resolves of the General Court."

Just as G. L. c. 79 ("Eminent Domain") embodies rights guaranteed under art. 10 of the Declaration of Rights, so does G. L. c. 29, relating to State finance, reflect the constitutional mandates of Part II, c. 2, § 1, art. 11. General Laws c. 29, § 18, as amended through St. 1953, c. 263, § 2, provides: "[N]o money shall be paid by the commonwealth without a warrant from the governor drawn in accordance *with an appropriation then in effect,* and after the demand or account to be paid has been certified by the comptroller; provided, that the principal and interest on all public debts shall be paid when due without any warrant and that no appropriation shall be required for the payment of . . . [specified funds and obligations]" (emphasis supplied).

Except in a very narrow class of cases, in which the present case is not included, there exists no constitutional or statutory authority for payment of any money without a prior appropriation. See *Singleton* v. *Treasurer & Receiver Gen.,* 340 Mass. 646, 649 (1960). The provisions of G. L. c. 79 create no exception to that rule.

[12] See generally *Reeside* v. *Walker,* 52 U.S. (11 How.) 272, 291-292 (1851) (under art. 1, § 9, of the United States Constitution, no payment may be made from treasury without appropriation).

§ 10A, mandamus will issue only to those having a *duty of compliance* with other provisions of the eminent domain statute. It is true that if there existed an unexhausted appropriation sufficient to pay all or part of the judgment, the Treasurer would be obliged to comply with c. 79, § 36A. This court could then compel him to do so in accordance with § 10A; however, that is not so where no funds are available from which the Treasurer might draw.

The Treasurer is not free to pick and choose among the funds entrusted to him to satisfy demands for payment. Were that the case, the Treasurer could, at will, usurp the powers of appropriation which, under the Commonwealth's Constitution, reside with the Legislature. Part II, c. 1, § 1, art. 4, of the Massachusetts Constitution. Article 63, § 3, of the Amendments to the Massachusetts Constitution.[13] To adopt the plaintiffs' reasoning would be to confer upon the Treasurer a "most dangerous discretion." *Reeside* v. *Walker*, 52 U.S. (11 How.) 272, 291 (1851).

The cases relied upon by the plaintiffs are inapposite. In *County Comm'rs of Middlesex County* v. *Superior Court*, 371 Mass. 456, 461-462 (1976), officials had available reserve funds from which they might lawfully draw to meet unanticipated salary increases for certain court personnel. There was nothing in that case that may be construed to authorize expenditures in excess of appropriations in the ordinary case. *Id.* at 460-461. In *O'Coins, Inc.* v. *Treasurer of the County of Worcester*, 362 Mass. 507, 509 (1972), this court recognized an inherent judicial power to bind the county contractually when the functioning of the courts re-

---

[13] The important function served by the Legislature's primary authority has long been recognized. "The general intent underlying art. 63 of the Amendments to the Constitution is to centralize the financial affairs of the Commonwealth in its own treasury and place responsibility for their control in the General Court. All money belonging to the Commonwealth must be paid into the treasury. No money can be paid out of the treasury except under the provisions of the budget which require both executive and legislative sanction." *Opinion of the Justices*, 297 Mass. 577, 580 (1937).

quires reasonably necessary expenses. *O'Coin's* is distinguishable from this case. The result in *O'Coin's* is demanded by the inherent power of the courts, "a separate and independent department of government entrusted with the exclusive power of interpreting the laws." *Id.* at 509. Implicit in the constitutional grant of power to the courts is the authority to take all steps necessary for proper judicial administration. *Id.* at 510. This rationale cannot be stretched into the radical transformation of the Commonwealth's fiscal policy which the plaintiffs' argument implies. Finally, in *Markus* v. *County of Middlesex,* 356 Mass. 517, 518-519 (1969), this court recognized that mandamus could issue to enforce an eminent domain award, but in that case there existed an unexhausted appropriation from which payment could be made.

Similarly, this court cannot accept the suggestion that an eminent domain judgment is in the nature of a "public debt" such that appropriation and warrant requirements need not be met.[14] This term comes from G. L. c. 29, § 18, and has no application to this case. Nor is this a proper case for the exercise of certain borrowing powers which have been conferred upon the Treasurer. Where such powers exist, they are narrowly confined and circumscribed by the Constitution and the General Laws.[15]

The case is remanded to the county court which is to retain jurisdiction until the prorogation of the 1984 legislative session, after which an appropriate judgment shall be entered.[16]

*So ordered.*

---

[14] See, e.g., *Manchester* v. *Department of Envtl. Quality Eng'g,* 381 Mass. 208, 218 (1980).

[15] For example, the Legislature has authorized the Treasurer to borrow on the account of the Commonwealth in connection with the finances of the Massachusetts Bay Transportation Authority. G. L. c. 161A, § 12.

[16] The plaintiffs in their complaint asked for attorneys' fees but they have not argued the issue in their brief. Therefore, we decline to consider the question. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975). See *Griefen* v. *Treasurer & Receiver Gen., supra.*