Agnes, Peter W., J.
I. INTRODUCTION
This is a civil action in which the plaintiffs, Clealand B. Blair and Nancy J. Blair, seek judicial review of the denial of a variance by the Department of Conservation and Recreation, and contend that the Massachusetts Watershed Management Act, G.L.c. 92A 1/2 and its regulations, 350 C.M.R. §§11.01-11.13, are unconstitutional in violation of Articles 10 and 49 of the Massachusetts Constitution.
The defendant, the Massachusetts Department of Conservation and Recreation, has filed a Motion to Dismiss the plaintiffs claims on the ground that those claims are barred by the doctrine of res judicata on account of a previous proceeding that took place before the Superior Court of Suffolk County, and a subsequent appeal of that decision to the Massachusetts Appeals Court. Commonwealth v. Blair, 60 Mass.App.Ct. 741 (2004); Commonwealth v. Blair, 2000 WL 875903 (Mass.Super. June 6, 2000).
The plaintiffs have filed a Motion for Judgment on the Pleadings seeking judicial review of a decision which was issued by the Division of Administrative Law Appeals and adopted by the Department of Conservation and Recreation (“DCR”), denying the plaintiffs’ application for a variance pursuant to the Massachusetts Watershed Management Act (“Act”). The plaintiffs request that this Court set aside the decision of the DCR and declare that the Act effects a taking of their property without just compensation and is, therefore, unconstitutional under Article 10 of the Massachusetts Constitution. For the following reasons, the defendant’s Motion to Dismiss is DENIED, and the plaintiffs’ Motion for Judgment on the Pleadings is also DENIED.
II. FACTUAL BACKGROUND
On or about August 13, 1977, the Blairs purchased a parcel of land which abuts Demond Pond in Rutland, Massachusetts. Pl.s’ Memo, in Supp. of Mot. Judm. Pldgs., at 1 (Sept. 19, 2006). At that time, the land was forested but the premises contained a residential camp house, as well as a lawn area and a beach area. The Blairs used the property for activities such as boating, swimming, canoeing and picnicking. In 1999, the Blairs conveyed title to this property to Phillip S. Davis as Trustee of the 7 Maple Springs Extension Realty Trust. The Blairs are the primary beneficiaries under the Trust. Id. at 2.
In 1992, Massachusetts enacted the Watershed Management Act. G.L.c. 92A 1/2. The Act regulates land use and activities within certain critical areas of the Massachusetts Watershed System in an effort to protect and preserve the quality of pure water in the Commonwealth and to assure its availability for future generations. Id. at §2. The Act prohibits, among other things, “alterations within 200 feet of the bank of a tributary or surface water” within designated watersheds. Id. at §5(a). However, the Act does provide a variance procedure to allow for landowners to make certain alterations, if doing so will not hinder the Act’s purpose of protecting the public water supply. Id. at §5(1). Also, the Act allows for the construction of a single-family home on any lot which existed prior to the Act’s enactment in 1992. Id. at §5(h). Demond Pond is one of the protected water sources covered under the Act and its regulations, and the Blairs’ property is within the 200-foot zone protected by the Act. Def.’s Memo, in Opp. to Pis.’ Mot. Judm. Pldgs. at 3 (Sept. 19, 2006).
In 1994, the Town of Rutland permitted the Blairs to demolish the existing camp house and to erect a new home on the property for use as a primary residence for several months of the year. Id. at 3-4. Then, between 1995 and 1997, the Blairs made further structural changes to the property. These changes included clearing some of the existing trees and vegetation in order to enlarge the surface area of their lawn. They also enlarged the existing beach area to approximately double its original size by removing about 12 inches of the topsoil and filling it with sand. A retaining wall was erected that ran approximately 80 feet in length, and a brick walkway was installed, which measured approximately 3 feet wide by 80 feet long, and ran from the new home to the newly enlarged beach area. The Blairs did not seek a variance for these additional changes to the property. Id.
In 1998, the Commonwealth filed a complaint against the Blairs alleging a violation of the Watershed *605 Management Act for making the additional alterations to their property. Commonwealth v. Blair, 2000 WL 875903 (Mass.Super. June 6, 2000). The Blairs counterclaimed alleging that the Act affected a taking of their property under both the Fifth Amendment of the United States Constitution, and Article 10 of the Massachusetts Constitution. Id. at 18. The Blairs also claimed that Article 49 of the Amendments to the Massachusetts Constitution requires that the Commonwealth acquire a property interest, in order to carry out the Act’s regulations and, therefore, they must be compensated. Id. at 20. Both parties filed motions for summary judgment. The Superior Court held that the Blairs had violated the Act when they altered their property, and that the Blairs’ constitutional challenges to the Act were ripe for adjudication Id. at 5, 7. The Court further found that no taking under the Fifth Amendment to the United States Constitution occurred because there was no categorical taking, and the act survived the three-prong test employed in federal “takings” analysis; no taking occurred under Article 10 of the Massachusetts Declaration of Rights, as the State constitutional analysis parallels the federal analysis; and that Article 49 of the Amendments to the Massachusetts Constitution does not require compensation for restrictions on land development, absent a finding that a taking has occurred. Id. at 17-21. The Court ordered the Blairs to restore the property to the condition it was in before the alterations. Id. at 23. The Blairs appealed.
On appeal, the Blairs waived their taking claim under the U.S. Constitution and proceeded on their claims under the Massachusetts Constitution. The Appeals Court, unlike the Superior Court, held that the taking claim was not ripe for adjudication because the Blairs had not exhausted their administrative remedies since they had not yet applied for a variance under the Act. Blair, 60 Mass.App.Ct. at 749. As to the Article 49 claim, the Appeals Court agreed with the decision of the Superior Court, and rejected the Blairs’ interpretation that the Commonwealth was duty bound to acquire a property interest in order to carry out the regulations of the Act. Id. at 750-51.
Subsequent to the appeal, the Blairs negotiated a plan with the DCR to restore their property pursuant to the order of the Superior Court. Def.’s Opp. to Pls.’ Mot. Judm. Pldgs. at 4 (Sept. 19, 2006). After the restoration was complete, the Blairs submitted an application to obtain a variance from the DCR, which, if granted, would have allowed them to undo the work completed under the restoration plan. Id. at 5. On September 16, 2004, the DCR denied the Blairs’ application. After the Blairs requested an appeal of that decision, an Administrative Magistrate with the Division of Administrative Law Appeals affirmed the decision to deny the variance. That decision was then adopted by the DCR and a final decision was issued as to the variance. Id. Having exhausted their administrative remedies, the Blairs now appear before this Court seeking to have the DCR decision set aside, as well as a declaration that the Act and its regulations are unconstitutional.
III. DISCUSSION
1. The Defendant’s Motion to Dismiss
The plaintiffs in this action, the Blairs, have filed a complaint in which they claim that the Massachusetts Watershed Management Act effects a taking of their property without just compensation in violation of both Article 10 of the Massachusetts Constitution and Article 49 of the Amendments to the Massachusetts Constitution. The defendant has moved to dismiss these claims on the ground that they are barred by the doctrine of res judicata.
The doctrine of claim preclusion bars a claim when the moving parly establishes “(1) the identity or privily of the parties to the present and prior actions, (2) the identity of the cause of action, and (3) a prior final judgment on the merits.” DaLuz v. Dep’t of Correction, 434 Mass. 40, 45 (2001). In this action, the identities of the parties are the same as, or are in privity with, those parties in the prior proceedings before the Superior Court and the Appeals Court. However, in this action, the Blairs have asserted a different claim under Amendment Article 49, than was asserted in the previous action before the Superior Court. In the previous action, the Blairs claimed that, pursuant to Amendment Article 49, the Commonwealth was duty bound to acquire a property interest in land in order to enact regulations which restricted the use of their property. The Superior Court rejected this interpretation of Article 49 and entered judgment accordingly. The Appeals Court affirmed the decision of the Superior Court in rejecting the Blairs’ proposed interpretation of Amendment Article 49. Blair, 60 Mass.App.Ct. at 750-51. In the current action, however, the Blairs no longer allege that the Commonwealth must acquire a property interest under Article 49. Instead, recognizing that Article 49 only authorizes the Commonwealth to acquire property interests when necessary, they claim that the regulations of the Watershed Management Act, as applied to their property, grants to the Commonwealth a de facto property interest without compensation, which is akin to an easement and, therefore, the Act is unconstitutional. Although similar, this claim has not been litigated before either court in the previous proceedings.
As to their taking claim under Article 10, the Blairs contend that a final judgment on the merits has not been issued on that claim. In Superior Court, the Blairs argued for the Court to abandon the federal takings analysis, which Massachusetts courts have always applied. The Court ruled that the claim was ripe for adjudication and refused to apply the standard proposed under the Blairs’ interpretation of Article 10. Applying the federal takings analysis, the Superior Court entered a final judgment declaring that the Act *606 did not amount to a taking, and upheld the constitutionality of the Act. On appeal, the Appeals Court held that the Blairs’ taking claims under both Article 10 and Article 49 were not ripe for adjudication because the Blairs had not exhausted their administrative remedies by applying for a variance as provided for in the Act. Without vacating the judgment entered by the Superior Court, the Appeals Court stated that “the motion judge equated enforcement with a permit denial, ruling that the Commonwealth’s enforcement action constituted a final determination of the Act’s requirements.” Commonwealth v. Blair, 60 Mass.App.Ct. 741, 747 (2004). The Court went on to state that “the taking claim is premature. A decision on a variance application, not an enforcement action, would show with finality the extent of the restrictions applied to the locus.” Id. at 748. Since that holding by the Appeals Court, the Blairs have undergone the variance procedure, including appeals, presumably in an effort to “ripen” their taking claims so that they may be heard by this Court. In light of this history, the Court denies the defendant’s Motion to Dismiss and will hear the taking claims under Article 10 and Amendment Article 49, as presented in their Motion for Judgment on the Pleadings.
2. The Plaintiffs’ Motion for Judgment on the Pleadings
A. The Taking Claim Under Article 10
The Blairs assert that the denial of their variance application was in violation of constitutional provisions and should be set aside. The Blairs do not argue that the evidence presented at the administrative hearings was insufficient to deny their application for a variance. Instead, the Blairs allege that because they are prohibited from altering their land in the manner presented by the variance application, that their “unaltered land is being pressed into public service” and, as a result, a taking has occurred because the Act, as applied to their property, denies them of all economically beneficial use of that portion of their land affected by the Act. On that ground, it is alleged, that the Act effects a taking of their property, without just compensation, in violation of Article 10 of the Massachusetts Constitution.
In asserting this argument, the Blairs ask that this Court adopt an interpretation of Article 10, which is far more restrictive than that which has traditionally been utilized in Massachusetts. Instead of applying the federal takings analysis, as is traditionally done, by looking at the entire parcel to determine the effect of government regulation upon their land, the Blairs ask the Court to look only to that portion of property actually affected by the regulation. The Blairs insist that, although this interpretation has never previously been followed by a Massachusetts court, it is the standard which is mandated by the text of Article 10. This Court rejects the Blairs’ interpretation of Article 10 because it is inconsistent with the history surrounding its enactment, as well as Massachusetts precedent.
Article 10 of the Massachusetts Constitution, in relevant part, provides:
no part of the property of any individual, can, with justice, be taken from him, or applied to public uses, without his own consent, or that of the representative body of the people . .. And whenever the public exigencies require, that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor.
MA Const. art. X. The Blairs hinge their argument on the “no part” language found in the text.[1] One must interpret the words of Article 10 as the Framers who drafted them, and the citizens who adopted them, would have understood them in 1780. See Opinion of the Justices, 308 Mass. 619, 626 (1941). In the years before and after the Constitution was adopted in 1780 a “taking” meant a physical seizure, ouster or invasion of private property by the government. W. Teanor, The Original Understanding of the Takings Clause and the Political Process, 95 Colum.L.Rev. 782, 791 (1995). The decisions of the Supreme Judicial Court reflected this view. See Callender v. Marsh, 18 Mass. 418, 429 (1823) (stating that Article 10 of the Declaration of Rights “. . . is confined to cases where there is a direct appropriation of property of individuals to public uses”).
It was not until 1922, in the Supreme Court Case of Pennsylvania Coal Co. v. Mahon, that a “regulatory taking” was first recognized. Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1922). In 1978, in Penn Central Transportation Co. v. New York, the Court set forth a three-prong inquiry to determine when a regulation has gone too far, so as to result in a regulatory taking. Penn Central Transp. Co. v. New York, 438 U.S. 104 In Perm Central, the Court explained that “ Taking’jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature of the interference with rights in the parcel as a whole.” Id. at 130-31. Finally, in the case of Lucas v. South Carolina Coastal Council, the Court distinguished between “regulatory takings.” Lucas v. South Carolina Coastal Council, 505 U.S. 1003 (1992). Without disturbing the three-prong inquiry set forth in Penn Central Transportation, the Court recognized that a taking may occur when a regulation completely deprives an owner of “all economically beneficial use of her property.” Id. at 1017; see also Palazzolo v. Rhode Island, 533 U.S. 606 (2001). A taking which is found under the circumstances recognized in Lucas has become known as a “categorical taking” or a “total taking.” In all other instances where a landowner is *607 not deprived of all economically beneficial uses of her property, the three-prong inquiry set forth in Penn Central is used to determine if a regulation, nonetheless, goes “too far.”
The Blairs claim that the Act deprives them of all economically beneficial use of the affected part of their property. This is a “categorical” taking claim, as first introduced in Lucas. Nevertheless, it is still a type of “regulatory” taking and, as previously noted, this type of taking was not recognized prior to the year 1922. See Lucas, 505 U.S. at 1019 (prior to 1922, “it was generally thought that the Takings clause reached only a direct appropriation of property ... or the functional equivalent of an ouster”). The plaintiffs insist that by including the “no part” language of Article 10, the Framers both recognized and expressly prohibited “partial takings" without just compensation. Moreover, they argue that this language mandates a change in the long established analysis of “regulatory” takings. Instead of looking at the entire parcel in determining the total impact of a government regulation upon land, the plaintiffs argue that the correct analysis to be applied to “regulatory takings,” under Article 10, is to change the denominator, so as to look at the regulation’s impact upon only that portion of the property which is affected by the regulation. This argument ignores the fact that, at the time Article 10 was drafted, the only takings recognized were those that resulted from a direct appropriation of property by the government, or a compete physical ouster. The relied upon language of Article 10 was written 142 years before the plaintiffs’ legal claim was even recognized. The plaintiffs offer no authority, and this Court finds none, to suggest that the Framers, in drafting Article 10, contemplated requiring compensation when regulations deprived landowners of the economically beneficial use of “a part" of their land, absent a physical ouster or direct government appropriation of private property for public use.
The Blairs’ interpretation of Article 10 is also inconsistent with well established Massachusetts precedent. The Supreme Judicial Court has held, in the takings context, that the Constitution of the Commonwealth affords protection parallel to that of the U.S. Constitution. Bromfield v. Treasurer & Receiver Gen., 390 Mass. 665, 668 (1983). To date, the Supreme Judicial Court has evaluated takings claims under the federal analysis and, in doing so, has repeatedly rejected the idea that regulatory takings analysis should focus solely on the property interest affected. See Chiancola v. Bd. of App. of Rockport, 65 Mass.App.Ct. 636 (2006); Gove v. Zoning Bd. of App. of Chatham, 444 Mass. 754, 762-64 (2005) (in the Lucas context, “the complete elimination of a property’s value is the determinative factor”); Zanghi v. Bd. of App. of Bedford, 61 Mass.App.Ct. 82, 85 (2004); Daddario v. Cape Cod Comma., 425 Mass. at 415-18 (1997); Lopes v. Peabody, 417 Mass. 299, 304 (1994); Steinbergh v. Cambridge, 413 Mass. 736, 741-44 (1992), cert. denied, 508 U.S. 909 (1993); Moskow v. Commr. of Envtl. Mgmt., 384 Mass. 530, 533 (1981); Lovequist v. Conservation Commn, of Dennis, 379 Mass. 7, 19-20 (1979). Ultimately, “the question is, what has the owner lost?” Chamber of Com. v. Boston, 217 U.S. 189, 195 (1910) (Holmes, J.). Furthermore, the plaintiffs’ interpretation of Article 10, if accepted, would result in the local governments having to pay compensation, upon a finding of a taking, whenever any zoning regulation or other land use restriction eliminated the economically beneficial use of any part of a landowner’s property. This very concern was considered by the Supreme Court when it was stated that “Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law.” Pennsylvania Coal Co., 260 U.S. at 413.[2]
In light of the history surrounding the drafting of Article 10 and settled Massachusetts case law on this issue, this Court rejects the Blairs’ proposed interpretation of Article 10, and holds that the Act does not amount to a taking of their property under Article 10 of the Massachusetts Constitution. Since the Blairs have previously waived their federal taking claim in prior proceedings and do not claim, here, that the Act deprives them of all economically beneficial use of their property as a whole, there is no need to consider this claim further.
B. The Taking Claim Under Amendment Article 49
The Blairs claim that the restrictions of the Act, as applied to their property, have granted to the Commonwealth a defacto interest in their property.[3] Specifically, they contend that the DCR has acquired a property interest “in the nature of an easement.” Amendment Article 49, as amended by Amendment Article 97, of the Massachusetts Constitution reads, in pertinent part, as follows:
The people shall have the right to clean air and water, freedom from excessive and unnecessary noise, and the natural, scenic, historic, and esthetic qualities of their environment; and the protection of the people in their right to the conservation, development and utilization of the agricultural, mineral, forest, water, air and other natural resources is hereby declared to be a public purpose. The general court shall have the power to enact legislation necessary or expedient to protect such rights.
In the furtherance of the foregoing powers, the general court shall have the power to provide for the taking, upon payment of just compensation therfor, or for the acquisition by purchase or otherwise, of lands and easements or such other interests therein as may be deemed necessary to accomplish these purposes.
*608 MA Const. art. XCVII.
Article 49 expressly authorizes the Commonwealth to act in furtherance of the stated purpose of protecting natural resources by effecting a taking upon just compensation, or by purchasing properly interests, as necessary. As discussed above, the Act does not effect a taking of the Blairs’ property. Therefore, the Blairs would only be entitled to compensation under Article 49 upon a finding that the Commonwealth acquired a property interest in their land as a result of the Act’s application and impact on their land.
As the Blairs correctly point out, the Supreme Judicial Court has held that “an easement is an interest in land which grants to one person the right to use or enjoy land owned by another.” Commercial Wharf E. Condominium Assn. v. Waterfront Parking Corp., 407 Mass. 123, 133 (1990); citing Baseball Publishing Co. v. Bruton, 302 Mass. 54, 57-58 (1938); 3 R.R. Powell, Real Properly, par. 404[1], at 34-3 (1989 ed.). It is “a right, which one proprietor has to some profit, benefit, or beneficial use, out of, in, or over the estate of another proprietor.” Ritger v. Parker, 62 Mass. 145, 147 (1851). However, neither the Act, nor the DCR’s variance decision either deprives the Blairs of their exclusive use of this portion of their property, or grants to the DCR a right of use or enj oyment in it. The express language of Article 49 indicates that it is a public purpose that the general court shall have the authority to enact such legislation as is necessary to ensure that the people have the right to clean air, water and other natural resources. It is an exercise of state police power which grants certain authority to the Commonwealth to protect important rights of the public, for the benefit of the public as a whole.
The Blairs cite several Massachusetts cases which draw similarities between restrictive regulations and easements, but none which hold that restrictive regulations, which were enacted pursuant to the state’s police power for the benefit of the public as a whole, create an easement due to its restrictive effect on a person’s property. The Blairs point to Kaplan v. Boudreaux, 410 Mass. 435 (1991), for the proposition that the Court must look to the characteristics of the rights of the competing parties in deciding whether the DCR has acquired an interest in their land. In Kaplan, the Supreme Judicial Court reviewed condominium by-laws which effectively granted exclusive use of a common area to a single tenant. In deciding that the by-law created an interest in land, the Court stated that “The other unit owners thus lost all right to use part of the common property, and one unit owner gained the right to use it exclusively." Id. at 443. The Court went on to state that “The combination of the other unit owners’ loss of right to use the property and one owner’s gain of an exclusive right to use the property is qualitatively different from generalized use regulations.” Id. This decision does not lend support to the Blairs’ argument. Rather, as mentioned above, the decision suggests that regulations that apply to the public as a whole and benefit the same, as opposed to those which grant a benefit or use to a single person, do not grant an interest in land. This is precisely the impact that the Act has upon every landowner whose property falls within those areas covered under the Act. By no means does the Act or its regulations work to grant, to any one person, the right to use or enjoy a portion of the Blairs’ property. Instead, the Act imposes limited use restrictions upon all landowners of property within certain areas of the Massachusetts watershed system, for the purpose of preserving and protecting the State’s water sources. The benefit derived is one which is bestowed upon every Massachusetts citizen, and it is one which will be realized by our future generations as well.
In light of the Appeals Court holding that Amendment Article 49 does not require the Commonwealth to acquire a property interest to carry out the regulations of the Act, and this Court’s findings that no compensable taking has occurred as a result of the Act, and that the Act does not have the practical effect of granting the Commonwealth a de facto property interest in the Blairs’ property for which compensation must be paid, this Court holds that the Watershed Management Act does not violate the provisions of Article 49 of the Amendments to the Massachusetts Constitution.
ORDER
Under both the Constitution of the United States and the Constitution of the Commonwealth of Massachusetts, reasonable government action that restricts an owner’s use of a portion of the land, and that does not involve a physical invasion or a “categorical” or “total” regulatoiy taking, does not require a payment of compensation. Gove, 444 Mass. at 767. For the foregoing reasons, the defendant’s Motion to Dismiss is DENIED, and the plaintiffs’ Motion for Judgment on the Pleadings is DENIED.

The corresponding language contained in the Fifth Amendment of the U.S. Constitution reads, “nor shall private property be taken for public use, without just compensation.” U.S. Const. amend. V.

See also Keystone Bituminous Coal Assn. v. DeBenedictis, 480 U.S. 470, 498 (1987) (rejecting theory advanced in instant matter: “Similarly, under petitioners’ theory one could always argue that a setback ordrnance requiring that no structure be built within a certain distance from the properly line constitutes a taking because the footage represents a distinct segment of property for takings law purposes. Cf. Gorieb v. Fox, 274 U.S. 603 [1927] [upholding validity of setback ordinance]”).

Both the Superior Court and the Appeals Court have previously rejected the Blairs’ claim that Amendment Article 49 imposes a duty upon the Commonwealth, requiring it to purchase a property interest in any land affected by the restrictions contained in the Act. Here, the Blairs claim that, although they are not duty bound, the effect of the Act has, nonetheless, granted a property interest to the Commonwealth.